## E. W. WALLACE ET AL. v. NEW CASTLE ETC. R. CO.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF LAWRENCE COUNTY.

Argued October 15, 1890—Decided November 3, 1890.

1. After the bond of a railroad company to secure to a landowner compensation for land taken, etc., has been approved and ordered to be filed, under the provisions of § 2, act of April 9, 1856, P. L. 288, the landowner cannot sustain a bill in equity to restrain the completion of the railroad, on the ground that both the company and its sureties in the bond have become insolvent.

2. An order discharging a rule to show cause why such bond should not be striken from the record, upon the ground of the then existing insolvency of the obligors, although made without prejudice, is conclusive against the right of the petitioner afterward to maintain a bill in equity to restrain the completion of the railroad, upon the same grounds of relief: Per McMichael, P. J.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 201 October Term 1890, Sup. Ct.; court below, number and term not given.

On August 28, 1886, George Wallace and Nancy I., his wife, filed a bill in equity against the New Castle Northern Railway Company. The franchises and property of the defendant company having subsequently been purchased by the New Castle and Shenango Valley Railroad Company, an amended bill was filed on July 31, 1888, making the last named company also a defendant.

The bill averred, in substance, that the New Castle N. Ry. Co., desiring to enter upon the lands of the said wife for the construction of its road, tendered a bond in the sum of $5,000, with D. H. Wallace and W. C. Harbison as sureties, which bond the plaintiffs refused to accept; that on August 1, 1883, the said bond was presented to the Court of Common Pleas, and, against the objections of the plaintiffs, was approved and directed to be filed, etc., whereupon the said company entered upon the plaintiff's land and had partly constructed its rail-

Statement of Facts.

road; that on January 23, 1884, proceedings for the assessment of damages were instituted which resulted in a report of viewers awarding the sum of $3,000 for damages, from which report the company entered an appeal that was still pending and undetermined; that at the time of the approval of the said bond, both the said company and its sureties in the bond were really insolvent, and shortly after said approval became notoriously insolvent, and still so remained; praying:

1. That the court would decree that the approval of said bond was procured by fraud, and that such bond and its approval were totally without effect to give any right to the defendants.

2. For an injunction to restrain the company, its agents, etc., from further entry upon said lands until compensation was paid or secured.

3. For further relief.

The cause, having been put at issue by answers and replications, was referred to *Mr. James M. Sword,* as master and examiner, who on August 7, 1890, filed a report, finding that the sureties to the bond were not insolvent at the time the bond was approved, but became insolvent about September, 1883, and had since so remained; that there was not sufficient evidence that a fraud was practiced upon the court to obtain an approval of said bond; and that an order of the court discharging a rule to show cause why the bond should not be stricken off, made on February 12, 1885, upon the petition of plaintiffs filed September 24, 1884,—though modified by an order made on September 7, 1888, that it should be without prejudice to any right of the plaintiffs by bill in equity or any other judicial proceeding, and also without prejudice to any rights of the purchasers of the said railway company acquired since February 12, 1885,—was conclusive against the right of the plaintiffs to have relief in the present proceeding. The master, therefore, recommended that the plaintiffs' bill be dismissed.

To the said report, the plaintiffs filed exceptions, alleging, inter alia, that the master erred:

2. In not finding that all the obligors in the bond were really insolvent at the date of its filing and approval by the court, and in finding the sureties solvent at that time.[1]

4. In finding that the order, discharging the rule to show cause why the bond should not be stricken off, was conclusive against the plaintiffs in the present proceeding.[2]

5. In finding that the defendant, the New Castle & Shenango V. R. Co. was rightfully on plaintiffs' land.[3]

After argument of said exceptions the court, McMICHAEL, J., on September 8, 1890, filed the following opinion :

On September 24, 1884, these plaintiffs presented their petition to court, in which they alleged the same grounds for relief, substantially, which are alleged in the original bill in the present case, and prayed the court to strike off and cancel the approval of the bond, the same bond mentioned in the present bill, and to compel the New Castle Northern Railway Company to give other and better sureties, before proceeding further in the construction of its road. Several other petitions of like character were presented by other parties over whose lands the New Castle Northern Railway had been located.

After hearing the arguments in all these cases, the court, on February 12, 1885, made an order in each case refusing to grant the prayer of the petition, and in the case of Elizabeth Welsh v. New Castle Northern Railway Co., at No. 26 September Term 1883, filed an opinion giving the reasons for the orders so made. The same question came up again in 1888, in the case of Wm. Bryant v. New Castle Northern Railway Co., at No. 25 September Term 1883, when the subject was again considered, and the former ruling of the court was adhered to. Now, the court is, in effect, asked to reconsider and reverse these former decisions.

I do not blame the counsel for their earnest persistence to find some relief for their clients. This railroad is located across quite a number of farms whose owners are in precisely the same condition, respecting their damages, that these plaintiffs are in. The former decisions of this court, on their rights, doubtless appear unjust to these landowners, who, as the case stands, cannot collect any damages for the injuries done them by the construction of this railroad. Hence their persistence ought to be excused.

There has not been anything presented, however, in the present case, which convinces me that the court erred in its former decisions on this subject.

In article I., § 10, of the constitution, it is written : "Nor shall private property be taken or applied to public use with-

Opinion of Court below.

out authority of law, and without just compensation being first made or secured." In article XVI., § 8, it is provided that corporations " shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction." These clauses are restrictive in their character. They grant no right to any one to take private property for public use. They prohibit the state from granting the franchise of eminent domain so that it can be used, and they prohibit every corporation from using that franchise, without paying or securing just compensation for property taken, injured or destroyed.

The legislature can grant the right to take private property for public use subject to these restrictions, and it has never been doubted that the legislature may prescribe the kind and character of the security to be given and the manner in which it shall be given. The power to so prescribe must be lodged somewhere else than in the parties immediately concerned, viz., the corporation and the property owner, because they might never agree. The state has retained this power, and has exercised it, and its right to do so will not, I think, be questioned.

Then we have this case: The New Castle Northern Railway Company had the right to take plaintiffs' property for its use in constructing its railroad, upon securing to the plaintiffs the payment of just compensation for the property taken. The kind and character of the security to be given and the manner of giving it were prescribed by law. The company observed and obeyed all the legal requirements respecting the security, and took the property. Did it have the right to take it? It is surely difficult to answer no to that question. It had the right under certain conditions and restrictions, and it complied with these conditions and restrictions. Then its right was absolute. There is nothing anywhere in this legal machinery which makes the company's right to the property conditional on the security being adequate for all future time, or until the compensation shall be in fact paid. The company must give a bond " with at least two sufficient sureties," " and if the bond and sureties are approved " by the court, " the bond shall be filed in said court for the benefit of those interested: " Section 2, act of April 9, 1856, P. L. 288.

Opinion of Court below.

The sufficiency of the sureties is to be decided by the court, where the parties do not agree respecting them, and if the court decide them sufficient, that is an end of the question. There is no further condition that they must remain sufficient. If there were such a condition, then the company's right to take property upon giving security would be valueless. It would be no right at all. The only right to take private property for public use, then, would be to pay the owner the just compensation. Until actual payment the owner would retain his grasp on the property. The right to take the property on giving security cannot be reasoned away in such a manner. "Sufficient sureties," as used in the act of 1856, does not mean sureties who will not or cannot become insolvent. If it did, then no such bond as the act requires could ever be given, because there are no such sureties. The history of the business world proves that they do not exist.

The only reasonable, and therefore the true construction of the word " secured " in the constitution, is that it shall be made reasonably safe or sure that the owner of the property taken shall be able to collect the compensation for it, and the words " sufficient sureties " in the act, must be construed to mean such sureties as at the time they are taken make it reasonably certain that the owner of the property taken can collect from them a just compensation.

These views are fully sustained by the Supreme Court in Fries v. South. Penna. R. & M. Co., 85 Pa. 73, and Hoffman's App., 118 Pa. 512. True, the solvency of the sureties was not a question in either of those cases. But, if their insolvency could have defeated the company's right in either case, the Supreme Court could not have reached the conclusion it did reach.

I have thus again considered the vital question in this case. As already stated, it has several times before been decided by this court. What I have now said, is but a repetition in another form of what was said in the case of Elizabeth Welsh v. New Castle Northern Ry. Co. The counsel said the reasoning in that case did not appear very satisfactory. Possibly I have now made the subject more clear.

The case might have been disposed of on the point made by the learned master, that the whole subject matter of the present

bill and complaint was adjudicated on the former petition, but I thought it would be better to reconsider the merits of the case.

The exceptions to the master's report are not sustained, and the plaintiffs' bill is dismissed; the plaintiffs to pay the costs.

—Thereupon the plaintiffs took this appeal, specifying that the court erred:

1–3. In not sustaining plaintiffs' exceptions.[1 to 3]

4. In decreeing the dismissal of the plaintiffs' bill.

*Mr. S. W. Dana* (with him *Mr. S. D. Long* and *Mr. W. D. Wallace*), for the appellants.

Counsel cited: West. Penn. R. Co. v. Johnston, 59 Pa. 296.

*Mr. J. Norman Martin* (with him *Mr. D. B. Kurtz* and *Mr. L. T. Kurtz*), for the appellees.

Counsel cited: (1) Section 10, article I., and § 8, article XVI., of the constitution; Hoffman's App., 118 Pa. 512; Fries v. South. Penna. R. & M. Co., 85 Pa. 73; Beale v. Railroad Co., 86 Pa. 512; Wadhams v. Railroad Co. 42 Pa. 303. (2) Gordinier's App., 89 Pa. 528; Frauenthal's App., 100 Pa. 290; Cochran v. Eldridge, 49 Pa. 365; Lyon v. Manuf. Co., 125 U. S. 702.

PER CURIAM:

This appeal presents a question of some interest and importance. It is so well discussed by the learned judge of the court below that we affirm the decree upon his opinion.

The decree is affirmed and the appeal dismissed at the costs of the appellants.