## Pittsburgh Railways Co., Appellant, *v.* Port of Allegheny County Authority.

178

Argued March 24, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

denied January 15, 1965.

*Clyde A. Armstrong*, with him *C. M. Thorp, Jr., Clyde W. Armstrong*, and *Thorp, Reed & Armstrong*, for appellant.

*William H. Eckert*, with him *William B. Mallin, C. Arthur Wilson, Jr.*, and *Eckert, Seamans & Cherin*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 30, 1964:

Appellant, Pittsburgh Railways Company, appeals from the refusal of the court below to grant a preliminary injunction in an equity action to enjoin the appellee, Port of Allegheny Authority, from filing its petition for condemnation, and from making its proposed deposit with the Court.[1] Pittsburgh Railways Company also appealed from the orders of the court below (1) appointing viewers to determine and assess damages by reason of the condemnation of appellant's property and (2) granting appellee permission to make payment into court of a percentage of damages estimated by it resulting from its exercise of eminent domain.[2]

---

[1] No. 164 March Term, 1964, Appeal from Order at No. 2581, April Term, 1964.

[2] No. 165 March Term, 1964, Appeal from Order at No. 2580, April Term, 1964.

The Port of Allegheny Authority was created by and exists under the Second Class County Port Authority Act of 1956, P. L. (1955) 1414, as amended by Act of 1959, P. L. 1266, 55 P.S. §551 et seq., which creates the Authority as a "body corporate and politic", to "operate for the purposes contained in this Act", which are declared in the Act "to be public uses for which public money may be spent and private property may be acquired by the exercise of the power of eminent domain".

"The Second Class County Port Authority Act authorizes petitioner, [appellee] among other things, to acquire, own and operate an integrated transportation system in Allegheny County, Commonwealth of Pennsylvania, and grants to petitioner [appellee] the power of eminent domain, including but not limited to, the power to condemn by the exercise of its right of eminent domain any transportation system operating entirely within Allegheny County or eighty percentum (80%) of whose revenue vehicle miles for the preceding calendar year were operated within Allegheny County.

"Pittsburgh Railways Company owns and operates a transportation system over eighty percentum (80%) of whose revenue vehicle miles for the calendar year 1963 were operated within Allegheny County."[3]

The Port Authority, on February 26, 1964, by resolution, condemned Pittsburgh Railways Company's transportation system, consisting of certain named property listed in exhibits[4] referred to in the resolution, which property the Port Authority considered useful to its system. The condemnation did not include all Railways' property.

---

[3] Petition for appointment of viewers.

[4] Attached to the Port Authority condemnation resolution were various exhibits listing the condemned property and a list of mortgages, judgments and liens.

The court below, on February 28, 1964, had before it (1) petition of the Port Authority for the appointment of viewers,[5] (2) petition of the Port Authority for the payment of money into Court,[6] (3) petition and exceptions of the Pittsburgh Railways Company,[7] (4) complaint in equity of Pittsburgh Railways Company.[8] Counsel for the parties presented extensive oral argument. There was no evidence presented, the record consisting of the above pleadings or papers in the nature thereof, being sworn to and containing affidavits. At the conclusion of arguments, the court entered the orders from which these appeals were taken by the Railways company.

Railways, in briefly summarizing the appeals being considered, says: "An Authority condemns an integrated transportation system but excludes many items of property in actual use in the system's operation. Moreover, it condemns corporate records of the condemnee completely unrelated to operation and maintenance of the system. Upon deposit in Court by the condemnor of 75% of its so-called damage estimate, unrelated to actual damages, and without securing payment of damages, the condemnor is awarded possession. The condemnee's motion for a preliminary injunction is denied and exceptions to such condemnation and taking are summarily dismissed."[9]

---

[5] Attached thereto were the Port Authority condemnation resolution, various exhibits listing the condemned property and a list of mortgages, judgments and liens.

[6] Pursuant to condemnation resolution $3,750,000 being 75% of $5,000,000, the amount estimated by Port Authority as the damages.

[7] Praying the court to refuse the petition and assigning many grounds therefor.

[8] Praying for equitable relief to enjoin and restrain the Port Authority from filing its petition for condemnation and from making its proposed deposit with the Court.

[9] Appellant's brief from statement of questions involved.

The Railways Company maintains that the eminent domain power granted by the Port Authority Statute violates the State and Federal Constitutions, particularly Art. 1, §9, Art. 1, §10, Art. 16, §8 and the 14th Amendment, §1.[10] Appellant contends, also, that the statutory delegation of sole authority to the condemnor to estimate damages and the determination by the condemnor of what constitutes a transportation system as stated in the Port Authority Act is unconstitutional.[11] In addition, Railways complains that corporate records not related to the operation or maintenance of the

---

[10] Art. 1, §9 provides ". . . nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

Art. 1, §10 provides ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

Art. 16, §8 provides "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction. The General Assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers or otherwise; and the amount of such damages in all cases of appeal shall on the demand of either party be determined by a jury according to the course of the common law."

Constitution of the United States (14th Amendment, §1) provides "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[11] Second Class County Port Authority Act, 1956, P. L. (1955) 1414, as amended, 55 P.S. §551 et seq.

Railways system have been condemned by the Authority.

The pertinent sections of the Second Class County Port Authority Act related to these appeals provide, 55 P.S. §563.1: ". . . the authority shall, within two years after approval by the Board of County Commissioners and the recording and filing of the plan of integrated operation in the office of the recorder of deeds and with the Pennsylvania Public Utility Commission as hereinabove provided, acquire by purchase, lease or eminent domain, . . . all transportation systems operating entirely within the county in which the authority is created or eighty per centum of whose revenue vehicle miles for the preceding calendar year are operated within said county . . ."; and 55 P.S. §552(13) "The term 'transportation system' shall mean all property, real and personal, useful for the transportation of passengers for hire, including but not limited to power plants, substations, terminals, garages, bridges, tunnels, subways, monorails, railroad motive power, trains, railroad passenger cars and equipment, belt conveyors, inclines, car barns, streetcars, buses, rails, lines, poles, wires, off street parking facilities as well as the franchises, rights and licenses thereto, including rights to provide group and party services."; and 55 P.S. §557.1 ". . . When the authority exercises its right of eminent domain, it shall, prior to taking possession of the property, pay into the Court of Common Pleas of the county in which said authority is created in the manner to be provided by the rules of court, a sum equal to seventy-five per centum (75%) of the amount estimated by it as the damages which will result from such exercise. Upon such payment into court, the authority shall have the right to immediate possession of the property, and the authority shall be relieved of all obligation to see to the application or distribution of said money paid into court. . . ."; and 55 P.S. §553 "(a) . . . which shall constitute public bodies corporate and politic, exercis-

ing the public powers of the Commonwealth as an agency thereof. . . . (b) . . . (13) To have the power of eminent domain. . . . (18) An authority shall have no power, at any time or in any manner, to pledge the credit or taxing power of the Commonwealth of Pennsylvania or any political subdivision, nor shall any of its obligations, be deemed to be obligations of the Commonwealth of Pennsylvania or of any of its political subdivisions, nor shall the Commonwealth of Pennsylvania or any political subdivision thereof be liable for the payment of principal or interest on such obligations."; and 55 P.S. §557.1 "The authority shall exercise its power of eminent domain in the manner prescribed by the provisions of Article XXVI of the Act of July 28, 1953 (P.L. 723), known as the 'Second Class County Code', except as such provisions are in conflict with the provisions of this section. . . ."

The Second Class County Code (Article XXVI, §2606, 16 P.S. §5606) provides for the filing of bond upon approval of court where the parties cannot agree upon the amount of damages due the owner when immediate possession is desired.

We are presented with the problem of determining whether the provisions of the Port Authority Act meet the Constitutional requirements of "just compensation being first made or secured". The Port Authority Act is unusual in that the exercise of the power of eminent domain shall be as in the Second Class County Code except as the provisions in the Authority Act are in conflict with the County Code. The County Code provides for filing of bond approved by the Court when the parties are unable to agree on the amount of damages. The Port Authority Act has no such provision but does require the condemnor to pay into Court 75% of the estimated damages as estimated by the condemnor.[12]

---

[12] The Eminent Domain Code, enacted since the institution of the instant litigation, in §§403 and 407, provides procedures for the security of condemnees.

There is undoubtedly a conflict here in the provisions of the Acts; and this is the principal area of conflict in this litigation. Appellant contends that an eminent domain statute that sanctions the foregoing procedure violates the State and Federal Constitutional provisions against taking property without due process and without just compensation being first made or secured and the statutory delegation of sole authority to the condemnor to estimate damages is unconstitutional.

It must be borne in mind that the Constitution is the Supreme Law of the land and legislative acts are subordinate, or, as Mr. Justice (now Chief Justice) BELL said, in considering an ordinance in relation to the very constitutional provisions here under consideration, in *Miller v. Beaver Falls,* 368 Pa. 189, 192, 82 A. 2d 34 (1951) : "However, it must not be forgotten that all acts of the legislature and of any governmental agency are subordinate to the Constitution, which is the Supreme Law of the land; and therefore no matter how desirable the act may appear or how worthy the objective, it cannot be sustained if it is interdicted by the Constitution. It is well known that the Constitution of the United States and the Constitution of Pennsylvania provide for the protection and maintenance of liberty, but it is not so well known or remembered that they likewise contain specific provisions for the protection of private property".

The giving of security is a prerequisite of the condemnor's right to possession to secure just compensation to an owner for property "taken, injured or destroyed" in the exercise of the power of eminent domain, as required by Art. XVI, §8, of the Pennsylvania Constitution. The form of security is not specified in either the State or Federal Constitutions; however, it must be "just compensation being first made or secured". The legislature has from time to time in its enactments provided for security to be given as directed by public and private bodies invested with the

power of eminent domain. And in some instances where security was not provided, or inadequate or non-existent or the prescribed procedure was not followed, the courts ordered compliance with the Constitutional mandate.

In the case of *The Borough of Harrisburg v. Crangle*, 3 Watts & S. 460 (1842), where the terms of the Act were not followed, the court ordered the borough to furnish bonds to the property owners.

In the case of *Turnpike Road v. Railway Co.*, 177 Pa. 585, 35 A. 850 (1896), the court ordered security to be given even though the condemnor paid into court the amount of the viewers' award. The procedure under the Act provided for an appraisal to be made by viewers and allowed an appeal by either party. We held that this procedure did not meet the constitutional requirements of proper security.

In *Michael v. Crescent Pipe Line Co.*, 159 Pa. 99, 28 A. 204 (1893), we held that "the constitution expressly provides that 'the amount of such damages in all cases of appeal shall, on the demand of either party, be determined by a jury, according to the course of the common law'. . . . If the 'amount' of the damages shall be determined 'by a jury,' the necessary inference is that the power of the jury in that respect cannot be limited by the act of the court in approving the bond tendered by defendant. The bond is not intended as a measure of damages, but merely as security. There is no provision for appeal from the order of court approving the bond; but, in recognition of the constitutional right of trial by jury, for the purpose of determining the amount of damages, express provision is made for appeal from any preliminary assessment of damages 'by viewers or otherwise.' In practice, the court is generally careful to require a bond sufficiently large in amount to cover all damages to which the landowner may be entitled; but, whether that be done

or not, the power of the jury, in the premises, is wholly unaffected by the amount that may be named in the bond."

In *Wallace v. Railroad Co.*, 138 Pa. 168, 171, 172, 22 A. 95 (1890), it was held that: "The legislature can grant the right to take private property for public use subject to these restrictions [the Constitutional restrictions], and it has never been doubted that the legislature may prescribe the kind and character of the security to be given and the manner in which it shall be given. The power to so prescribe must be lodged somewhere else than in the parties immediately concerned, viz., the corporation and the property owner, because they might never agree. The State has retained this power, and has exercised it, and its right to do so will not, I think, be questioned. . . . The sufficiency of the sureties is to be decided by the court, where the parties do not agree respecting them, and if the court decide them sufficient, that is an end of the question. There is no further condition that they must remain sufficient."

The condemnor in this case, pursuing the requirements of the Port Authority Act, and we have no doubt of the bona fides of its sincerity, has placed a value of $5,000,000 as the estimated damages which will result from its exercise of the power of eminent domain. This estimate is of course disputed by condemnee. Assuming the estimated damages to be fair and just and $3,750,000 (75% of the amount estimated by it as the damages) having been paid into court, there is nevertheless lack of compliance with the mandate of Constitutional requirement. Even if the total amount of damages as estimated by the condemnor, acting in the purest of good faith, had been paid into court and the amount of damages was disputed by the condemnee, it would fall short of the requirement of the Constitutional requirements, notwithstanding strict compli-

ance with the Port Authority Act. This Court has never relaxed its strict adherence to the Constitution and has always required those exercising the power of eminent domain, public, private or governmental or an authority "exercising the public power of the Commonwealth as an agency thereof",[13] to comply with the provisions of the State and Federal Constitutions.

The Port Authority Act specifically provides "The Authority shall have no power, at any time or in any manner, to pledge the credit or taxing power of the Commonwealth of Pennsylvania or any political subdivision, nor shall any of its obligations be deemed to be obligations of the Commonwealth of Pennsylvania or of any of its political subdivisions, nor shall the Commonwealth of Pennsylvania or any political subdivision thereof be liable for the payment of principal or interest on such obligations." In *Keene v. Borough of Bristol,* 26 Pa. 46 (1856), where the power of taxation of the municipal corporation was so limited as to be inadequate to pay, within a reasonable time, the damages resulting from the laying out of a street, this Court ordered the filing of a bond as security for the payment of the resulting damages. Normally, it is the function and duty of the lower court to entertain an application for surety and to pass upon the adequacy of the bond. The lower court in this case did not have the opportunity to pass on this vital constitutional requirement and no useful purpose would be gained by our sending the case back for this determination. Consequently, we will order the Port Authority to give its bond to the appellant, which bond will be unlimited in amount and will be secured by all of the assets of the Port Authority.

The Railways Company questions the right of the Port Authority to determine what constitutes a trans-

---

[13] 55 P.S. §553(a), Port Authority Act.

portation system. Railways contends that the vesting of such discretion solely in the condemnor is an unconstitutional delegation of power. The Port Authority Act gives to the condemnor the right to condemn a transportation system and that term means all property useful for the transportation of passengers for hire. When a transportation system is condemned as here, any items of property not included in the condemnation may be dealt with by the board of viewers and later by the court, if necessary, and any resulting damages, whatever it might be, may be readily ascertained and compensation therefor made to the condemnee.

Appellant maintains the Port Authority was not authorized by law to condemn corporate records not related to the operation or maintenance of the condemned transportation system. This question, like the foregoing one, as to what constitutes a transportation system, is one that is appropriately within the scope of the board of viewers in the first instance and then, if necessary, the courts, to determine what corporate records are essential to the transportation system. We cannot make this determination at this time. We have before us only the pleadings and papers filed in the nature thereof as mentioned earlier in this opinion.

We therefore affirm the orders of the court below as modified, providing the Port of Allegheny Authority complies with the order of court made herewith at No. 165, March Term, 1964, by filing its bond, unlimited in amount, secured by all the assets of the Port Authority, within 10 days from the filing of this opinion.

In the appeal at No. 164, March Term, 1964, the court below refused the issuance of a preliminary injunction praying that the Port Authority be restrained from filing its petition for condemnation and from making its proposed deposit with the Court.

We recently considered a situation similar to this appeal in *Schwab v. Pottstown Borough,* 407 Pa. 531, 180 A. 2d 921 (1962), wherein we held that under the statutory law of Pennsylvania, a complete and adequate procedure has been provided to guard and protect the Constitutional rights of private owners in all condemnation proceedings. And more recently, in *Cunfer v. Carbon Airport Authority,* 414 Pa. 408, 200 A. 2d 768 (1964), we said: "The basic challenge in the equity action is clearly to the right, power and authority of the Authority to exercise any right of eminent domain under the circumstances, and the resolution of that issue can and should be made only in eminent domain proceedings. As this Court said in Schwab, supra, page 534: 'It is a commonplace that where the legislature has provided a remedy or procedure, that remedy or procedure is exclusive and alone must be pursued. [Citing cases].'"

As in *Cunfer,* for lack of jurisdiction in equity, the instant complaint must be dismissed.

The order of the court below at No. 2581 April Term, 1964, appeal No. 164 March Term, 1964, refusing a preliminary injunction is affirmed and the complaint dismissed. Costs to be borne by appellant.

The orders of the court below at No. 2580 April Term, 1964, appeal No. 165 March Term, 1964, as modified, are affirmed.

Mr. Justice JONES and Mr. Justice ROBERTS concur in the result.