582 A.2d 390

AMERICAN NUCLEAR INSURERS, An Association by the Insurance Company of North America, Trustee Ad Litem and Lumbermen's Mutual Casualty Company, Appellants,

v.

METROPOLITAN EDISON COMPANY and Jersey Central Power & Light Company and GPU Nuclear Corporation, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 2, 1990.

Decided Nov. 9, 1990.

376

Stephen A. Cozen, Philadelphia, for appellants.

Steven E. Greenbaum, Reading, for appellees.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

OLSZEWSKI, Judge.

This is an appeal by American Nuclear Insurers (ANI) and Lumbermen's Mutual Casualty Company (Lumbermen's) from an order rendered by a three-judge panel of the Court of Common Pleas of Dauphin County, Pennsylvania. The order appealed from granted appellees' preliminary

objections to appellants' declaratory relief action, dismissed appellants' declaratory relief petition, relinquished jurisdiction and transferred the matter to the Supreme Court of the State of New York. The sole issue before this Court is whether the panel abused its discretion in dismissing appellants' petition for declaratory judgment, concluding, *inter alia*, that appellants sought such relief in anticipation of commencement of suit by appellees, their insureds. We hold that the court below did not abuse its discretion, and affirm its dismissal of appellants' petition for declaratory relief.

This case arises out of an insurance claim by appellees, co-owners of Three Mile Island (TMI) Nuclear Facility, against appellants, their property insurers, for damage caused by corrosion of several heat exchanger tubes in two of the facility's steam generators, which was discovered in the fall of 1981. Following an investigation and by letter dated September 20, 1985, appellants allegedly denied the claim on the basis that appellees' insurance policy did not cover losses caused by such corrosion. For more than three years following this letter, the parties entered into a series of letter agreements extending appellees' time in which to file proofs of loss and to institute suit for damages. By letter dated October 6, 1988, the parties agreed that appellees would be able to file suit until April 1, 1989. Appellees' proofs of loss statement was presented to appellants on October 31, 1988.[1]

---

1. The policies included the following provisions:
   WHEN LOSS PAYABLE. The amount of loss for which the Insurers may be liable shall be payable sixty (60) days after proof of loss, as herein provided, is received by the Insurers....
   SUIT. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve (12) months next after inception of the loss.
   These provisions were at no time waived by either party, as evidenced by a letter dated October 18, 1988 from ANI stating:
   Moreover, by virtue of agreeing to, and/or conducting such a meeting the Nuclear Insurers do not intend thereby to waive, modify, or otherwise amend their presently stated positions with

The record indicates that on March 22, 1989, just nine days before appellees would be barred from filing suit, appellants filed a declaratory judgment action to determine whether appellees' loss was covered under the policy. On the following day, March 23, 1989, appellants sent appellees notification that their proofs of loss statement filed on October 31, 1988, in addition to previous documents submitted under the policy, "are hereby rejected," and their previous denial of liability "is reconfirmed." After receiving this notification of claim denial from appellants on March 28, 1989, appellees, on March 31, 1989, filed a lawsuit in the state courts of New York asserting breach of contract against appellants for denial of the claim.[2] The New

regard to the requirements for the filing of Sworn Statements in Proof of Loss and/or the institution of suit.

Therefore, as the proof of loss was received on October 31, 1988, appellants would have become responsible to pay the loss on December 31, 1988, sixty days after their receipt of the proofs of loss. However, by letter of December 22, 1988, appellants requested an extension of their time to respond to the proofs of loss. On December 28, 1988, appellees granted appellants another 30 days, until January 30, 1989, to respond to the proofs of loss. In early January, 1989, the parties engaged in settlement negotiations and discussed the possibility of an alternative dispute resolution should negotiations fail. To foster negotiations, appellees agreed to further extend the time for appellants to respond to the proofs of loss until February 27, 1989 and later another extension was granted until March 28, 1989. However, appellees' deadline for instituting suit was not changed by these extensions and remained at April 1, 1989. (Appellants had previously set the deadline for instituting suit at April 1, 1989 by letter dated October 6, 1988.)

2. Appellees were precluded by the terms of the insurance policy from filing suit prior to complying with the requirements of the policy. One of these policy requirements was that a loss would not become payable until sixty days after proof of loss is received by the insurers (appellants). *See* n. 1. Appellees gave appellants numerous extensions in which to respond to the proofs of loss filed on October 31, 1988, the last of which was to expire on March 28, 1989. Hence, appellees would not be permitted to file suit until receiving appellants' response to appellees' proofs of loss (or until March 28, 1989), which was in fact received on March 28, 1989. Also, the record indicates that at the time they filed the declaratory judgment petition, appellants knew that appellees had prepared a complaint and were ready to sue in the event the dispute could not be resolved. It follows that appellants sought a declaratory judgment on March 22, 1989, prior to giving appellees formal notice of the claim denial, with the knowledge that appellees had only until April 1, 1989, to commence suit.

York Court acknowledged jurisdiction but stayed further action pending the disposition of the declaratory judgment action in Pennsylvania.

On July 3, 1989, appellees filed preliminary objections to the declaratory judgment petition, arguing that the lower court should decline to accept jurisdiction because: (1) appellants (insurers) brought suit in anticipation of appellees' (insureds') action for damages; (2) the insurance companies sued prematurely and sought an advisory opinion through their petition; and (3) the pending New York action was the better, and only, vehicle for the resolution of the complex factual issues involved.

In response to appellees' preliminary objections, by order and opinion dated February 28, 1990, the Pennsylvania trial court dismissed appellants' declaratory judgment petition, relinquished jurisdiction and transferred the matter to the Supreme Court of New York. The trial court supported its refusal to entertain jurisdiction over the case by noting that the exercise of jurisdiction under the Declaratory Judgment Act is within the discretion of the court. With this in mind, the court declined jurisdiction, holding: (1) the action was filed by insurers (appellants) in anticipation of insureds (appellees) bringing suit; (2) there was then pending another action involving the same set of circumstances brought by the real parties seeking recovery; and (3) a full trial would provide a better vehicle to resolve the complex factual issues involved.

█ The long-standing rule has been that declaratory judgments are not obtainable as a matter of right. Whether the lower court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion.[3] *Clark, Inc. v. Township of Hamilton,* 128 Pa.Commw. 31, 38, 562 A.2d 965, 968–969 (1989), *citing State Farm Mut. Ins. Co. v. Semple,* 407 Pa. 572, 180 A.2d 925 (1962); *Smith v. County of York,* 37 Pa.Commw. 47, 388 A.2d 1149 (1978), *cert. denied,* 441 U.S. 908, 99 S.Ct.

**3.** *See,* 42 Pa.C.S.A. § 7537.

1999, 60 L.Ed.2d 377 (1979); *Presbyterian–University of Pennsylvania Medical Center v. Keystone Ins. Co.*, 251 Pa.Super. 71, 380 A.2d 381 (1977). *See also, State Automobile Insurance Association v. Kuhfahl*, 364 Pa.Super. 230, 233, 527 A.2d 1039, 1040 (1987), *appeal denied*, 517 Pa. 618, 538 A.2d 500 (1988).

■ In Pennsylvania, declaratory relief is unavailable when it is sought merely in anticipation of an action at law by another party. *Commonwealth, Department of General Services v. Frank Brisco Co.*, 502 Pa. 449, 458–459, 466 A.2d 1336, 1340–1341 (1983); *Penox Technologies, Inc. v. Foster Medical Corp.*, 376 Pa.Super. 450, 454, 546 A.2d 114, 115 (1988). Appellants argue that the lower court erred in finding that they (appellants) filed for declaratory relief in anticipation of appellees' action at law and, therefore, abused its discretion in dismissing appellants' petition. We disagree.

■ Whether appellants filed the petition for a declaratory judgment in anticipation of appellees' action at law is a factual determination. It is well established that:

When we review a decision by a lower court, we must accept findings of fact supported by the evidence, for the lower court is in a much better position than we are to resolve conflicts in the evidence and issues of credibility. However, we are not bound to accept findings not supported by the evidence; nor are we bound to accept the lower court's inferences from the evidence, or its conclusions of law.

*Interest of Miller*, 301 Pa.Super. 511, 515–516, 448 A.2d 25, 27 (1982), *citing Frowen v. Blank*, 493 Pa. 137, 425 A.2d 412 (1981); *Hankin v. Hankin*, 279 Pa.Super. 179, 420 A.2d 1090 (1980), *rev'd on other grounds*, 302 Pa.Super. 295, 448 A.2d 1049 (1982).

■ Appellants argue that the lower court erred as a matter of fact in finding that the declaratory judgment action was filed in anticipation of appellee's suit against them. Appellants vehemently argue that the insurance

claim was officially denied by the September 20, 1985 letter to appellees. It follows, according to appellants, that either party was free to file suit at any time after this denial. Therefore, appellants contend, their petition for a declaratory judgment on March 22, 1989 was not motivated by an intent to prevent appellees from first bringing suit, because appellees could have brought suit any time after September 20, 1985.

█ The trial court, although determining that the declaratory judgment petition was filed in anticipation of suit, did not state exactly which facts on the record it relied upon to make such finding. We believe, nonetheless, that the record supports a finding that the claim was not officially denied until March 23, 1989, when appellants sent appellees notification that their proof of loss statement had been denied. The following facts on the record support the finding that the claim was not officially denied on September 20, 1985:

First, appellants, after September 20, 1985, continuously extended appellees' time in which to submit proofs of loss statements and file suit. By implication, appellants never waived the requirement that proofs of loss be filed. Additionally, affirmative evidence exists which establishes that appellants at all times expected proofs of loss to be filed by appellees.[4] By requiring proofs of loss to be filed, appellants had not officially denied the claim, thereby invoking appellees' right to file suit. If the September 20, 1985 letter had been an official rejection of appellees' claim, then

---

**4.** *See* letter of October 18, 1988 from ANI stating:

Moreover, by virtue of agreeing to, and/or conducting such a meeting the Nuclear Insurers do not intend thereby to waive, modify, or otherwise amend their presently stated positions with regard to the requirements for the filing of Sworn Statements in Proof of Loss and/or the institution of suit.

*See* note 5 below for excerpts of letter agreements from appellants granting an extension of appellees' deadlines (to file proofs of loss and institute suit) which expressly waive no rights under the policy and continue to insist on appellees' compliance with all terms and conditions of the policy. This would implicitly include the requirement that proofs of loss be filed.

appellants' subsequent receipt of proofs of loss would have been redundant and unnecessary.

> If [the insurer's] representative ... states that it will not pay any loss, what would be the use of filing a Proof of Loss? A policyholder need not do a vain thing, nor is he prejudiced for failure to observe a technicality, the performance of which would be useless.

*Fedas v. Ins. Co. of the State of Pennsylvania,* 300 Pa. 555, 560, 151 A. 285, 287 (1930). Therefore, by requiring that proofs of loss be filed, it is evident that appellants did not consider them to be useless or unnecessary, but obviously intended that the claim would be further investigated upon their receipt.

Second, the early extension letters, from December 16, 1985 through October 27, 1986, granting extensions of appellees' deadlines, expressly state that "the Insurers neither admit *nor deny* liability for the indicated claim." [5] (Emphasis added.)

Third, the record indicates that appellants themselves, in actuality, were not able to define the significance of the September 20, 1985 letter with respect to the subsequent proofs of loss requests, as demonstrated by deposition testimony of Mr. Erickson, a representative of ANI:

**5.** In the letter agreements of December 16, 1985, March 19, 1986, June 9, 1986 and October 27, 1986 granting extensions of appellees' deadlines, appellants included the following language:
> The granting of these extensions are subject to the express understanding that the Insurers neither admit nor deny liability for the indicated claim, and that they will insist on compliance by the Insured with all of the terms and conditions of the contracts of insurance, and waive no rights thereunder, except as to the extension of time hereunder granted.

In the letter agreements of February 12, 1987, April 27, 1987, August 13, 1987, October 30, 1987, April 8, 1988 and October 6, 1988 granting extensions of appellees' deadlines, appellants substituted the following language in lieu of the above:
> Any extensions of time we have granted in our letters of ... and today's letter, in no way change, modify, or amend the Pool's position on this loss as stated in Mr. Cozen's letter of September 20, 1985. The insurers will insist on compliance by the Insured with all of the terms and conditions of the contracts of insurance, and waive no rights thereunder, except as to the extension of time hereunder granted.

Q. If the proof of loss is not necessary to act as a precondition to the filing of suit, why do you want it?

A. Because the policy requires it.

Q. Policy also requires it as a pre-condition of suit but you apparently no longer wanted that. What other reason is there for a proof of loss as of October 18, 1988 in this case?

A. If they wanted to present a claim, then they would have to do it in the form of a proof of loss.

Q. Hadn't they already presented a claim?

A. No.

Q. Then what was denied?

A. What was denied? Very clever.

Q. Thanks.

A. I guess what was denied was the opportunity to present a claim. I have no idea.

Given these above facts, the trial court may have properly determined that appellees' claim was not officially denied until March 28, 1989, when appellees received a declination of coverage notice following their filing of proofs of loss.

Appellees were not, by the terms of the policy, permitted to institute suit until they received official notice of denial of the claim or until sixty days after appellants received their proofs of loss.[6] Therefore, appellants' declaratory judgment petition, which was filed on March 22, 1989, in effect blocked appellees from being the first to file suit on their claim, as appellees did not receive notice of their claim denial until six days after the declaratory judgment petition had been filed.

Even if it were true that appellees' claim was officially denied on September 20, 1985, appellants have, in any event, failed to belie the fact that on March 22, 1989, when the petition for declaratory judgment was filed, appellants had full knowledge that appellees' deadline to bring suit was nine days away, on April 1, 1989. Appellants would like this Court to believe that when they filed the petition, they

6. *See* n. 1.

did not expect that appellees would file suit by April 1, 1989. Appellants argue that on March 22, 1989, the petition was filed in order to relieve themselves of the continuing "uncertainty and insecurity" concerning their rights under the policy. (Appellant's brief at 24–25.) This argument implies that appellants did not expect appellees to file suit prior to April 1, 1989, because if they did expect appellees to sue, then they would have no reason to feel uncertain and file a declaratory judgment petition because their rights would soon be determined in the suit brought by appellees. Even if appellants honestly, however unrealistically, did not expect appellees to file suit prior to April 1st, then filing a declaratory judgment petition would have been senseless and financially risky. This is because appellees would be barred from filing suit after April 1, 1989. If appellants really believed that appellees would not file suit, then the most tactical decision would have been not to file the petition and wait for April 1st to pass, thereby avoiding liability entirely. Otherwise, appellants would have been unnecessarily taking the very expensive risk that the declaratory judgment panel would rule against them. It is clear that appellants, in filing the declaratory judgment petition on March 22, 1989, were well aware that appellees would not forego a claim in excess of 31 million dollars by failing to sue prior to April 1, 1989.

Additionally, appellants contend that the lower court's ruling constitutes an abuse of discretion as a matter of law in failing to weigh *forum non conveniens* considerations in holding that appellants' petition was anticipatory. However, we are unable to cite any authority for the proposition that a declaratory judgment cannot be dismissed as anticipatory unless there is also a finding of *forum non conveniens*. Appellants cite to *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir.1983), to support their argument; however, nowhere in that case does the court hold that a declaratory judgment petition may not be dismissed as anticipatory absent a finding of *forum non conveniens*. To the contrary, the court determined that the

district court did not abuse its discretion in finding the declaratory judgment to be anticipatory in nature, based only on the fact that the carrier denied the insured's claim on the same day that the petition was filed and after the carrier had granted the insured an extended time in which to file suit. *Id.* at 602. The court then discussed the *forum non conveniens* doctrine as a separate ground for dismissal of the declaratory judgment petition. *See also, Puritan Fashions* at 602 n. 3; *Pacific Emp. Ins. Co. v. M/V Capt. W.D. Cargill,* 751 F.2d 801, 804 (5th Cir.1985).

Appellants are correct, however, in the assertion that anticipatory declaratory judgment actions are disfavored because they are an aspect of forum-shopping and are an attempt to gain some type of improper procedural advantage. *See, Puritan Fashions* at 602 n. 3; *Pacific Emp. Ins. Co.* at 804. Nonetheless, we disagree with appellants' contention that they did not file the declaratory judgment petition in an attempt to gain an improper procedural advantage. As discussed above, the petition was filed nine days before appellees' would be forever barred from filing suit. If appellants' petition was filed merely in the course of seeking a declaration of their rights under the policies, they could have easily waited for appellees to file suit within the next nine days. There was simply no legitimate reason for filing the petition other than to prevent appellees from choosing a forum in which to litigate their suit.

We find that the lower court's conclusion that the petition for a declaratory judgment was filed in anticipation of appellees' bringing suit is supported by the record. The fact that appellants filed the declaratory action in a matter of days before appellees' opportunity to file an action at law was to expire supports the trial court's conclusion. Accordingly, the lower court did not abuse its discretion in declining jurisdiction on this basis.[7]

Order affirmed.

[7]. Because we decide that the trial court did not abuse its discretion in dismissing this anticipatory declaratory judgment action, we need not

determine the propriety of the trial court's remaining grounds for dismissal.