IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| GGNSC Clarion LP d/b/a "Golden Living Center – Clarion", GGNSC Warren Kinzua Valley LP d/b/a "Golden Living Center – Kinzua", GGNSC Wilkes-Barre II LP d/b/a "Golden Living Center – Summit", HarmarVillage Care Center LLC d/b/a HarmarVillage Care Center, Providence Care Center LLC d/b/a Providence Care Center, Mulberry Square Elder Care & Rehabilitation, LLC, Guardian Elder Care at Carlisle, LLC, Guardian Elder Care at Mountain Top I, LLC & Rehabilitation Center, Guardian Elder Care at Nanticoke LLC, Jefferson Hills Manor LLC, Brookline at Mifflintown, Inc., Reliant Audubon Holdings LLC, Reliant Evergreen Holdings LLC, Reliant Palmyra Holdings LLC, Reliant Silver Oaks Holdings LLC, Reliant Kade Holdings LLC, Reliant Coventry Holdings LLC, Reliant Overlook Holdings LLC, Reliant Briarcliff Holdings LLC, Pennsylvania Health Care Association, | : : : : : : : : : : : : : : : : : : : : : : : : | |
| Petitioners | : : | |
| v. | : : : | No. 165 M.D. 2015 Argued: November 18, 2015 |
| Kathleen G. Kane, in her Official Capacity as Attorney General of the Commonwealth of Pennsylvania, and Cohen Milstein Sellers & Toll PLLC, | : : : : : | |
| Respondents | : | |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
           HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION BY
PRESIDENT JUDGE PELLEGRINI                 FILED: January 11, 2016


Before the Court are the preliminary objections and motion to dismiss of Kathleen G. Kane, in her Official Capacity as Attorney General of the Commonwealth of Pennsylvania (collectively, OAG) and Cohen Milstein Sellers & Toll PLLC (Cohen Milstein) to the amended petition for review seeking declaratory relief filed by GGNSC Clarion LP d/b/a "Golden Living Center – Clarion," *et al.* (collectively, Facilities)[2] pursuant to the Declaratory Judgments Act.[3]  We sustain the preliminary objections, grant the motion to dismiss, and dismiss the amended petition for review.

---

[1] This matter was assigned to this panel before January 1, 2016, when President Judge Pellegrini assumed the status of senior judge.

[2] The petitioners and their affiliated entities are the owners and operators of long-term care facilities including skilled nursing facilities that are licensed by the Pennsylvania Department of Health (DOH) and that are certified under the Medicare and Medicaid programs pursuant to Titles XVIII and XIX of the federal Social Security Act, 42 U.S.C. §§1395 *et seq.*, and 42 U.S.C. §§1396-1, *et seq.*, administered by the United States Department of Health and Human Services (HHS) through the Centers for Medicare and Medicaid Services (CMS). (Amended Petition for Review at ¶4).  In August 2015, this Court discontinued the matter as to the eight named Reliant facilities upon praecipe to discontinue.

[3] 42 Pa. C.S. §§7531-7541.  The purpose of the Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal **(Footnote continued on next page…)**

In 2012, OAG entered into a contingent fee agreement with Cohen Milstein, which has been subsequently amended, through which Cohen Milstein began an investigation into whether a number of the Facilities had fraudulently, deceptively or falsely represented their services in their billing and marketing practices under the Unfair Trade Practices and Consumer Protection Law (Consumer Protection Law),[4] breach of contract and unjust enrichment.

_____

**(continued…)**

relations, and is to be liberally construed and administered." 42 Pa. C.S. §7541(a). An action brought under the Declaratory Judgments Act "must allege an interest by the party seeking relief which is direct, substantial and present … and must demonstrate the existence of an actual controversy related to the invasion or threatened invasion of one's legal rights." *Bowen v. Mount Joy Township*, 644 A.2d 818, 821 (Pa. Cmwlth.), *appeal denied*, 652 A.2d 1326 (Pa. 1994). Granting or denying an action for a declaratory judgment is committed to the sound discretion of a court of original jurisdiction. *Gulnac by Gulnac v. South Butler County School District*, 587 A.2d 699, 701 (Pa. 1991).

[4] Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§201-1 – 201-9.3. Section 2 of the Consumer Protection Law defines "unfair or deceptive acts or practices" to include: "[u]sing deceptive representations … in connection with … services;" "[r]epresenting that … services have … characteristics, … uses, benefits, or quantities that they do not have…;" "[r]epresenting that … services are of a particular standard, quality or grade … if they are of another;" "[a]dvertising … services with intent not to sell them as advertised;" or "[f]ailing to comply with the terms of any written guarantee … given to the buyer at, prior to or after a contract for the purchase of … services is made[.]" 73 P.S. §201-2(4)(iv), (v), (vii), (ix), (xiv). In turn, Section 3 "declare[s]" unlawful any "unfair or deceptive acts or practices" as defined in Section 2. 73 P.S. §201-3.

Additionally, Section 4 of the Consumer Protection Law provides:

> Whenever the Attorney General … has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that

**(Footnote continued on next page…)**

In this declaratory judgment action, the Facilities contend the investigation was not based on any material consumer complaints, but was based on Cohen Milstein's efforts to persuade OAG, among many other state attorneys general, to investigate purported violations and to sue. In their petition for review, they contend that the Attorney General exceeded her authority by issuing a series of administrative subpoenas and retaining Cohen Milstein to assist in her investigation and the related litigation and sought a declaration:

> • In Count I, that OAG lacks authority to investigate or pursue litigation concerning staffing levels at their skilled nursing facilities because the Health Care

---

**(continued…)**

> proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

73 P.S. §201-4.

Finally, Section 4.1 of the Consumer Protection Law, added by Act of November 24, 1976, P.L. 1166, states:

> Whenever any court issues a permanent injunction to restrain and prevent violations of this act as authorized in section 4 above, the court may in its discretion direct that the defendant or defendants restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any violation of this act, under terms and conditions to be established by the court.

73 P.S. §201-4.1.

Facilities Act[5] vests exclusive jurisdiction in DOH and that OAG's action in this case violates their due process rights by circumventing the authorized regulatory process;[6]

- In Count II, that OAG is not empowered to delegate its authority to Cohen Milstein and the contract

---

[5] Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§448.101-448.904b. Section 201(1) of the Health Care Facilities Act states that "[t]he [DOH] shall have the power and its duties shall be … [t]o exercise exclusive jurisdiction over health care providers in accordance with this act." 35 P.S. §448.201(1). In turn, Section 813(a) provides, in relevant part:

> For the purpose of determining the suitability of the applicants and of the premises or for determining the adequacy of the care and treatment provided or the continuing conformity of the licensees to this act and to applicable local, State and federal regulations, any authorized agent of [DOH] may enter, visit and inspect the building, grounds, equipment and supplies of any health care facility licensed or requiring licensure under this act and shall have full and free access to the records of the facility and to the patients and employees therein and their records…."

35 P.S. §448.813(a). *See also* Section 801.1, added by Act of July 12, 1980, P.L. 655, 35 P.S. §448.801a ("It is the purpose of this chapter to protect and promote the public health and welfare through the establishment and enforcement of regulations setting minimum standards in the … operation of health care facilities … to assure safe, adequate and efficient facilities and services, and to promote the health, safety and adequate care of the patients or residents of such facilities. It is also the purpose of this chapter to assure quality health care through appropriate and nonduplicative review and inspection with due regard to the protection of the health and rights of privacy of patients and without unreasonably interfering with the operation of the health care facility or home health agency."); Section 817(a), 35 P.S. §488.817(a) ("Whenever any person … has violated any of the provisions of this Chapter or the regulations issued pursuant thereto, [DOH] may maintain an action … for an injunction or other process restraining or prohibiting such person from engaging in such activity.").

[6] Specifically, the Facilities assert that OAG's investigation constitutes administrative rulemaking without following the notice and comment requirements of the statute commonly referred to as the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1102-1602; 45 Pa. C.S. §§501-907, and the Regulatory Review Act, Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§745.1-745.14.

4

between OAG and Cohen Milstein constitutes an improper expenditure of state funds under state law and the Pennsylvania Constitution;[7] and

- In Count III, that OAG's subpoenas were improperly issued for the purpose of litigation in violation of Sections 918,[8] 919,[9] and 921 of the

---

[7] Article 3, Section 24 provides that "[n]o money shall be paid out of the treasury, except on appropriations made by law and on warrant issued by the proper officers…." Pa. Const. art. III, §24.

[8] Act of April 29, 1929, P.L. 177, added by Act of December 17, 1968, P.L. 1221, 71 P.S. §307-2. Section 918 provides that "[t]he Bureau of Consumer Protection [(Bureau)] shall have the power and its duties shall be … [t]o investigate commercial and trade practices in the distribution, financing and furnishing of goods and services to or for the use of consumers … to determine if such practices are detrimental to the public interest[; t]o investigate fraud, misrepresentation and deception in the sale, servicing and financing of consumer goods and products[; and t]o do such other acts as may be incidental to the exercise of its powers and functions." *See also* Section 201(c) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, 71 P.S. §732-201(c) ("The Attorney General shall appoint and fix the compensation of a first deputy attorney general, a director of the [Bureau] and such other deputies, officers and employees who may, at any time, exercise such powers and perform such duties as may be prescribed by the Attorney General. The Attorney General may establish such bureaus or divisions as may be required for the proper conduct of the office, including a criminal investigation bureau."); Section 204(d) of the Commonwealth Attorneys Act, 71 P.S. §732-204(d) ("The Attorney General shall administer the provisions relating to consumer protection set forth in sections 917 through 922 of the [Administrative Code] and appoint the advisory committee established under section 922.").

[9] 71 P.S. §307-3. Section 919 states, in relevant part:

> (a) The Attorney General shall be authorized to require the attendance and testimony of witnesses and the production of any books, accounts, papers, records, documents, and files relating to any commercial and trade practices which the [Bureau] has authority to investigate and conduct private or public hearings; and, for this purpose, the Attorney General or his representative may sign subpoenas, administer oaths or affirmations, examine witnesses and receive evidence during any such investigation or public or private hearing….

**(Footnote continued on next page…)**

5

Administrative Code of 1929 (Administrative Code)[10] and are unenforceable as overbroad and lacking definiteness.

In May 2015, this Court granted the Pennsylvania HealthCare Association (PHCA) leave to intervene in the action. In its petition, PHCA stated that "[i]f permitted to intervene, PHCA will adopt the petition for review filed by [the Facilities] as the basis for challenge to [OAG's] actions, and would not propose to file a separate petition for review." (Unopposed Petition for Leave to Intervene at ¶28).

**B.**

Overtaking the Facilities' declaratory judgment action, in July 2015, OAG filed *Kane v. GGNSC, LLC, et al.*, docketed in this Court at No. 336 M.D. 2015, which is an enforcement action under the Consumer Protection Law against two of the GGNSC facilities and twelve other Golden Living nursing homes. In that case, OAG alleged violations of the Consumer Protection Law and common

---

**(continued…)**

> (b) No documentary material produced pursuant to a demand under this section shall, unless otherwise ordered by a court for good cause shown, be produced for inspection or copying by, nor shall the contents thereof be disclosed to any person other than the authorized employe of the Attorney General without the consent of the person who produced such material….

[10] 71 P.S. §307-5. Section 921 states that "[t]he [Bureau] shall not duplicate or interfere with the function of the Pennsylvania Public Utility Commission and shall not be in substitution of any other Commonwealth agency having the power and duty to protect consumer interests in a particular field…."

law arising from the marketing and billing practices of Golden Living skilled nursing facilities and their parent corporations. Specifically, OAG claimed that Golden Living facilities' statements in their marketing promising to meet residents' needs for hygiene, comfort and nourishment were false, deceptive and misleading. OAG also claimed that the Golden Living defendants had engaged in deceptive, misleading and unfair practices by representing to consumers, insurers and the Commonwealth that they had provided basic care to residents when such basic care had, in fact, not been provided to residents. In their answer to OAG's complaint, the Facilities allege, among other things, that the complaint was filed in retaliation for its filing the declaratory judgment action now before us as well as stating that the OAG complaint mooted the request for subpoenas to the Facilities.[11]

## II.

## A.

As noted above, presently before the Court are OAG's preliminary objections[12] and motion to dismiss[13] the amended petition for review. With respect

---

[11] The docket entries in the enforcement matter at No. 336 M.D. 2015 indicate that there is an active stay. Pursuant to a September 2015 order, this Court, *inter alia*, deferred ruling on the Facilities' opposition to OAG's motions for admission *pro hac vice* in that matter until the same issues have been heard by the Court on the preliminary objections filed in the instant case docketed at No. 165 M.D. 2015. The attorneys seeking admission are from Cohen Milstein. The arguments for and against their admission mirror the parties' arguments regarding OAG's preliminary objections in the instant case, *e.g.*, whether OAG exceeded its authority in retaining the law firm.

[12] As this Court has explained:

**(Footnote continued on next page…)**

to Count I of the amended petition, as outlined above, the Facilities allege that OAG is without authority to conduct an investigation and to pursue litigation concerning the staffing level at their facilities, and that it is enforcing standards that are not required by DOH or federal agencies which constitutes administrative rulemaking in violation of the regulatory procedures and their due process rights. Additionally, with respect to Count III, the Facilities allege that OAG's subpoenas were improperly issued for the purpose of litigation in violation of the Administrative Code and are unenforceable as overbroad and lacking definiteness.

---

**(continued…)**

> In reviewing preliminary objections, all material facts averred in the complaint, and all reasonable inferences that can be drawn from them, are admitted as true. However, a court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. "Preliminary objections should be sustained only in cases that are clear and free from doubt."

*Seitel Data, Ltd. v. Center Township*, 92 A.3d 851, 859 (Pa. Cmwlth. 2014), *appeal dismissed*, 111 A.3d 170 (Pa. 2015) (citations omitted).

[13] *See* Pa. R.A.P. 1532(b) ("At any time after the filing of a petition for review in an … original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear."); Pa. R.A.P. 1972(a)(4) ("[S]ubject to Rule 123 (applications for relief), any party may move: … (4) To dismiss for mootness."). *See also* Pa. R.A.P. 105(a) ("These rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable. In the interest of expediting decisions, or for other good cause shown, an appellate court may … disregard the requirements or provisions of any of these rules in a particular case … on its own motion and may order proceedings in accordance with its direction.").

OAG filed the motion to dismiss as to some GGNSC facilities and Golden Living nursing homes on the grounds of mootness. OAG averred that the Facilities could raise matters raised in this action in the context of OAG's affirmative enforcement action. Moreover, OAG contends that because the administrative subpoenas issued to all GGNSC facilities were withdrawn, the Facilities' Count III claims that those subpoenas were improperly issued is moot, and to the extent that the Facilities' action was premised on the investigatory subpoenas, they now lack standing to pursue their amended petition for review. Accordingly, OAG concluded that because it filed an affirmative complaint against two of the GGNSC facilities and withdrew the subpoenas issued to all of the GGNSC facilities, judgment as it relates to GGNSC facilities should be granted in favor of OAG and Cohen Milstein with respect to those facilities.

As noted above, OAG has filed an enforcement action under the Consumer Protection Law in *Kane v. GGNSC, LLC, et al.*, docketed at No. 336 M.D. 2015, against two of the GGNSC facilities and twelve other Golden Living nursing homes and has asserted that any administrative subpoenas issued to these entities have been mooted or withdrawn. As a result, those Facilities may raise all of the claims raised in Counts I and III of the instant petition seeking declaratory relief that directly challenge OAG's authority to enforce the Consumer Protection Law against them in that enforcement proceeding. In fact, those Facilities raise the same claims in their preliminary objections to OAG's petition for review in the enforcement action that are raised in Counts I and III of the instant petition seeking declaratory relief.

Moreover, in the instant petition seeking declaratory relief, the Facilities specifically allege that "[l]itigation is therefore imminent and inevitable" in attempting to establish that "[a]n actual and immediate controversy exists between" them and OAG and Cohen Milstein. (Amended Petition for Review at ¶¶124, 131, 138).[14] It is well settled that "[i]n Pennsylvania, declaratory relief is unavailable when it is sought merely in anticipation of an action at law by another party. *Department of General Services v. Frank Briscoe Company, Inc.*, [466 A.2d 1336, 1339-40 (Pa. 1983)]; *Penox Technologies, Inc. v. Foster Medical Corp.*, [546 A.2d 114, 115 (Pa. Super. 1988)]." *American Nuclear Insurers v. Metropolitan Edison Company*, 582 A.2d 390, 393 (Pa. Super. 1990), *appeal denied*, 592 A.2d 1295 (Pa. 1991). Similarly, as here, where a declaratory judgment action has been filed in anticipation of an administrative enforcement proceeding, a court should decline to exercise jurisdiction. *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (citations omitted).[15]

---

[14] "A motion for summary relief may be granted only where no material fact is in dispute and the right of the moving party to relief is clear." *Brown v. Pennsylvania Department of Corrections*, 932 A.2d 316, 318 (Pa. Cmwlth. 2007) (citing Pa. R.A.P. 1532(b)). When considering a motion for summary relief, "the record must be viewed in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party." *Taglienti v. Department of Corrections*, 806 A.2d 988, 991 (Pa. Cmwlth. 2002).

[15] Generally, decisions of federal district courts and courts of appeals are not binding on this Court, even where a federal question is involved, but they may have persuasive value. *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 772 n. 11 (Pa. Cmwlth. 1997). However, *Ven-Fuel, Inc.* was specifically cited by the Pennsylvania Supreme Court in *Frank Briscoe Company, Inc.*, 466 A.2d at 1339-40, in holding that the Department of General Services could not obtain declaratory relief from this Court where the Department sought to establish its obligations under construction contracts and an affirmative defense to the contracts because the Department knew that the contractual relations with the five prime contractors had **(Footnote continued on next page…)**

In the instant motion to dismiss, OAG alleges that "as to the other causes of action, the GGNSC Petitioners can raise these arguments in the context of OAG's [enforcement action];" that "raising such arguments in that action is preferable because any challenges to the OAG's authority … can be assessed in the context of [OAG]'s enforcement action – and not some hypothetical future pleading" as alleged in the amended petition for review. (Motion to Dismiss at ¶17). OAG also contends that "as for the other causes of action, the fact that OAG's affirmative [enforcement] Complaint provides GGNSC Petitioners with a vehicle to raise their challenges—through Preliminary Objections or otherwise— and litigate these challenges in the context of a specific Complaint moots the present hypothetical challenge. *See Horsehead Resource* [*Development Company, Inc. v. Department of Environmental Protection*, 780 A.2d 856, 859 (Pa. Cmwlth. 2001), *appeal denied*, 796 A.2d 987 (Pa. 2002) (matter was moot, in part, because after the orders were withdrawn the challenger had avenues available to it for securing review)." (*Id.* at ¶21). We agree and because the issues raised in Counts I and III of the instant petition regarding OAG's authority will be disposed of in the now-pending enforcement action, we will not grant the declaratory relief that the Facilities seek herein with respect to two of the GGNSC facilities and twelve other Golden Living nursing homes. *Id.*

---

**(continued…)**

deteriorated and that the contractors were about to commence an action against the Department in the Board of Claims for breach of contract.

Likewise, with respect to the remaining claims in Count III relating to OAG's purported improper use of the administrative subpoenas, this claim is now moot as to the two GGNSC facilities and twelve other Golden Living nursing homes named in the enforcement action because any subpoenas issued to these entities have been mooted or withdrawn. *See, e.g., Ocala Star Banner Corporation v. State*, 721 So.2d 838-39 (Fla. Dist. Ct. App. 1998) ("Because the subpoena has been withdrawn, the petition for writ of certiorari is denied as moot. Discretionary review by certiorari should be afforded only where there is a departure from the essential requirements of law causing a miscarriage of justice, and, in this case, there can be no miscarriage of justice since the subpoena in question is no longer in effect.") (citations omitted).

**B.**

Regarding the claims made by the remaining facilities and PHCA in Count I of the amended petition for review, which are not subject to the enforcement action, OAG contends in its first and second preliminary objections that the allegations fail to state a valid claim for relief. We agree.

Contrary to the Facilities' assertion, DOH does not have exclusive authority to investigate or pursue litigation concerning staffing levels at skilled nursing facilities or to employ a model to establish such standards within the context of an anticipated action under the Consumer Protection Law. As outlined above, the Health Care Facilities Act does vest DOH with the authority to establish and enforce regulations setting minimum standards in the operation of health care facilities, to assure safe, adequate and efficient facilities and services, and to

12

promote the health, safety and adequate care of the patients or residents of such facilities. 35 P.S. §448.801a.[16] DOH also has the authority to initiate an enforcement action to restrain violations of the Health Care Facilities Act or the DOH's regulations. 35 P.S. §441.817(a).

However, DOH has no authority to investigate the consumer marketing and billing practices of skilled nursing and long-term care facilities or to initiate litigation to correct illegal acts in this regard. Rather, Section 204(d) of the Administrative Code authorizes OAG to administer its provisions regarding consumer protection, and Sections 4, 4.1 and 5 of the Consumer Protection Law specifically authorize OAG to restrain and obtain restitution for acts deemed illegal

---

[16] With respect to nursing services in "long term care facilities," Section 211.12 of DOH's regulations provides, in relevant part:

> (a) The facility shall provide services by sufficient numbers of personnel on a 24-hour basis to provide nursing care to meet the needs of all residents.

> \* \* \*

> (g) There shall be at least one nursing staff employe on duty per 20 residents.

> (h) At least two nursing service personnel shall be on duty.

> (i) A minimum number of general nursing care hours shall be provided for each 24-hour period. The total number of hours of general nursing care provided in each 24-hour period shall, when totaled for the entire facility, be a minimum of 2.7 hours of direct resident care for each resident.

28 Pa. Code §211.12(a), (g), (h), (i).

under its provisions. In turn, Section 2 defines such illegal acts, "unfair or deceptive acts or practices," as including "[u]sing deceptive representations … in connection with … services;" "[r]epresenting that … services have … characteristics, … uses, benefits, or quantities that they do not have…;" "[r]epresenting that … services are of a particular standard, quality or grade … if they are of another;" "[a]dvertising … services with intent not to sell them as advertised;" or "[f]ailing to comply with the terms of any written guarantee … given to the buyer at, prior to or after a contract for the purchase of … services is made[.]" 73 P.S. §201-2(4)(iv), (v), (vii), (ix), (xiv).

Moreover, the health care services that the Facilities provide to their residents fall within the ambit of the Consumer Protection Law. *See, e.g., Chalfin v. Beverly Enterprises, Inc.*, 741 F.Supp. 1162, 1175-76 (E.D. Pa. 1989) (holding that the corporate owner of a nursing home was a "person" within the meaning of Section 2(2) of the Consumer Protection Law; that the health care services provided by the nursing home were within the scope of "trade or commerce" Section 2(3); and that the nursing home's representation that it would assist the residents in procuring Medical Assistance benefits when it never intended to do so was an "unfair or deceptive act or practice" under Section 2(4)(xviii)); *Zaborowski v. Hospitality Care Center of Hermitage, Inc.*, 60 Pa. D. & C.4th 474, 493-94 (2002) ("Nursing homes are not one-dimensional business enterprises, but instead they are hybrid organizations, offering both medical and non-medical services. Thus, this court holds that a plaintiff can maintain a private cause of action against

14

a nursing home under [Section 9.2 of the Consumer Protection Law[17]] based only upon the non-medical services provided by the nursing home.").[18]

Any investigation or enforcement action initiated by OAG is directly related to "unfair or deceptive acts or practices" purportedly committed by the Facilities with respect to the staffing levels at their facilities. As a result, while minimum staffing levels may be regulated by DOH for health and safety purposes, any representations, advertisements or agreements that the Facilities made with their residents with respect to staffing levels, whether in accord with those required

---

[17] Added by Act of November 24, 1976, P.L. 1166, *as amended*, 73 P.S. §201-9.2. Section 9.2(a) provides, in relevant part:

> (a) Any person who purchases or leases … services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by Section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater

73 P.S. §201-9.2(a).

[18] *See, e.g., Foflygen v. R. Zemel, M.D. (PC)*, 615 A.2d 1345, 1354 (Pa. Super. 1992), *appeal denied*, 629 A.2d 1380 (Pa. 1993) ("According to the [Consumer Protection Law], unfair methods of competition and deceptive practices in the conduct of any trade or commerce are unlawful. 73 P.S. §201-3. The phrase 'trade or commerce' includes the sale of services. 73 P.S. §201-2(3). Among the practices condemned by the [Consumer Protection Law] are various misrepresentations as well as other fraudulent conduct that creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4). However, even though the Act does not exclude services performed by physicians, it is clear that the [Consumer Protection Law] is intended to prohibit unlawful practices relating to trade or commerce and of the type associated with business enterprises. It equally is clear that the legislature did not intend the Act to apply to physicians regarding medical services.") (citation omitted.)

by statute or regulation or not, may properly be enforced by OAG through its authority conferred by the Administrative Code and the Consumer Protection Law. Such action is proper under the foregoing statutes and does not constitute any impermissible administrative rulemaking regardless of whatever evidence OAG uses to establish a violation, including any type of staffing model. What OAG is seeking to enforce is the level of staffing that the Facilities either represented, advertised, or promised to provide to their residents and not what level OAG deems to be appropriate for the care of such residents. Accordingly, Count I of the amended petition for review is dismissed as to the remaining facilities and PHCA.

## C.

Regarding the remaining claims raised by the remaining facilities and PHCA in Count III of the amended petition for review regarding the subpoenas, OAG contends in its sixth and seventh preliminary objections that the Facilities fail to state a valid claim for relief and that the claims with respect to the subpoenas are not ripe. We agree.

Section 919(a) of the Administrative Code provides, in relevant part:

> In case of disobedience of any subpoena … the Attorney General or his representative may invoke the aid of the Commonwealth Court or any court of record of the Commonwealth, and such court may thereupon issue an order requiring the person subpoenaed to obey the subpoena … or to produce books, accounts, papers, records, documents and files relative to the matter in question. Any failure to obey such order of the court may be punished by such court as a contempt thereof.

71 P.S. §307-3(a).

As outlined above, OAG has no independent authority to enforce its subpoenas and the Facilities cannot contest the validity of the subpoenas in an action in equity until OAG invokes the foregoing enforcement procedure in a court of record or this Court. *In re Subpoena of Pennsylvania Crime Commission*, 309 A.2d 401, 404 (Pa. 1973). With respect to a motion to quash an administrative subpoena issued by the Pennsylvania Crime Commission, the Supreme Court explained:

> [W]e note that appellants' motion to quash the subpoena in the Common Pleas Court was improper. Appellants cannot contest the validity of the subpoena until the Commission invokes enforcement procedures in either the Courts of Common Pleas or the Commonwealth Court. This is so because, unlike a judicial subpoena, the Crime Commission is not given power to enforce compliance. Therefore, individuals are not placed in the dilemma of having to disobey the Commission's subpoena at their peril in order to contest its validity. Failure to comply is not punishable by fine or imprisonment unless it continues after a court has ordered compliance….
>
> Until the Commission invokes the aid of a court to enforce compliance with its subpoenas, the court is without jurisdiction in the matter. To hold otherwise would be to ignore the obvious possibility that the Commission may elect not to enforce its subpoena. Until the decision is made by the Commission to seek enforcement the subpoena is no more than an invitation to appear which can be ignored without peril by the recipient. Therefore, the premature initiation of equitable proceedings by appellants is in effect a nullity and it is incapable of divesting the Commission of its legal right

17

> to elect to proceed to seek enforcement in the forum of its choice as provided under the statute[]....

*Id.* at 404-05 (footnotes omitted). Likewise, in the instant matter, the Facilities' initiation of the instant declaratory judgment proceeding to challenge OAG's administrative subpoenas is premature because OAG has not yet asked a court to enforce the subpoenas under Section 919(a) of the Administrative Code. Accordingly, Counts I and III in the amended petition for review are dismissed.

### D.

Finally, in OAG's third preliminary objection, it alleges that the Facilities and PHCA lack standing to challenge OAG's use of outside counsel to conduct its investigation in Count II of the amended petition for review, citing Section 103 of the Commonwealth Attorneys Act, and *Commonwealth v. Janssen Pharmaceutica, Inc.*, 8 A.3d 267, 276 (Pa. 2010).[19] With respect to the Facilities' and PHCA's standing to assert Count II or any claims in Counts I and III relating to the contingent fee agreement with Cohen Milstein or its participation in the investigation and litigation, we find that the Supreme Court's opinion in *Janssen Pharmaceutica* is dispositive.

---

[19] 71 P.S. §732-103. Section 103 states that "[n]o party to an action, other than a Commonwealth agency including the Departments of Auditor General and State Treasury and the Public Utility Commission, shall have standing to question the authority of the legal representation of the agency."

In that case, the Commonwealth's Office of General Counsel (OGC)[20] filed a complaint in the Philadelphia County Court of Common Pleas raising statutory and common law tort claims relating to a prescription antipsychotic medication marketed and promoted by Janssen for uses that had not been approved by the Food and Drug Administration or "off label" uses. In filing the action, OGC did not use government attorneys, but retained Bailey Perrin, a private law firm from Houston, Texas, to prosecute the matter on a contingent fee basis. Janssen filed a motion to disqualify Bailey Perrin as OGC's counsel alleging that while OGC filed the complaint, no OGC attorney had filed an appearance, the complaint

---

[20] Section 301 of the Commonwealth Attorneys Act states, in pertinent part:

> There is hereby established the [OGC] which shall be headed by a General Counsel appointed by the Governor to serve at his pleasure who shall be the legal advisor to the Governor and who shall:
>
> (1) [A]ppoint for the operation of each executive agency such chief counsel and assistant counsel as are necessary for the operation of each executive agency.
>
> (2) Supervise, coordinate and administer the legal services provided by … the chief counsel and assistant counsel for each executive agency.
>
> \* \* \*
>
> (6) Initiate appropriate proceedings or defend the Commonwealth or any executive agency when an action or matter has been referred to the Attorney General and the Attorney General refuses or fails to initiate appropriate proceedings or defend the Commonwealth or executive agency.

71 P.S. §732-301(1), (2), (6). In turn, Section 102 defines "executive agency," in pertinent part, as "[t]he departments … of the Commonwealth government…." 71 P.S. §732-102.

was signed by a local counsel for Bailey Perrin, and a Bailey Perrin attorney verified the complaint. Janssen alleged that the contingent fee agreement restricted OGC's ability to consent to a non-monetary settlement of the action; the agreement contained a waiver of conflicts of interest arising out of Bailey Perrin representing other states in similar actions that varied from the usual conflict provisions in contingent fee agreements executed by OAG; and the agreement did not provide for OGC's control and management of the case as is usually provided in OAG's contingent fee agreements. As a result, Janssen claimed that the agreement violated the separation of powers doctrine by usurping the General Assembly's exclusive spending powers and violated its due process rights because those exercising governmental powers in adjudicative proceedings must have no financial interest in the outcome, must be impartial, and must maintain the appearance of impartiality.

The trial court denied the motion and the Supreme Court exercised extraordinary relief[21] to consider, *inter alia*, whether Section 103 of the Commonwealth Attorneys Act dictated that Janssen lacked standing to seek the

---

[21] Section 726 of the Judicial Code provides:

> Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

42 Pa. C.S. §726.

disqualification of Baily Perrin because of the alleged constitutional violations.  In

holding that Janssen lacked such standing, the Court explained:

> [T]he language of Section 103 is clear and unambiguous and thus provides a clear indication of the General Assembly's intent.  The obvious interpretation of Section 103 is that no party to an action, other than the Commonwealth agency involved in the action itself, may challenge the authority of the agency's legal representation.  Looking for the occasion of the Attorneys Act, Janssen has constructed a cogent argument that Section 103 could be read as intending only to preclude parties involved in litigation against the Commonwealth from challenging whether [OAG] or OGC properly should represent the Commonwealth agency, but does not extend to challenges against outside counsel representing the Commonwealth agency.  But, to credit Janssen's extra-textual argument would require a policy and statutory construction analysis of Section 103 that is not fairly invited by the clear and unambiguous statutory language actually employed in the legislation.  And, in any event, if we were to indulge in a digression into the purpose of the provision, we note that it is perfectly logical to conclude that the General Assembly fully intended the broad effect of the actual words chosen:  *i.e.*, that, in addressing the authority of Commonwealth attorneys, it intended that no party but the affected agency should be heard to complain about so fundamental an executive matter as the identity of the lawyers representing Commonwealth entities….
>
> [T]he OGC, on behalf of the Commonwealth and two of its agencies, sued Janssen, retaining Bailey Perrin to prosecute the action.  Pursuant to the plain language of Section 103, Janssen, as a party to the action other than the Commonwealth party, cannot be heard to challenge Bailey Perrin's authority to represent the Commonwealth party.  Because the statutory language is plain and unambiguous, the alternative construction offered by Janssen must fail.

21

*Janssen Pharmaceutica*, 8 A.3d at 276. *See also Sears v. Wolf*, 118 A.3d 1091, 1105 n. 18 (Pa. 2014) ("In [*Janssen Pharmaceutica*], this Court recognized that the general standing principles fashioned by the judiciary may yield to the will of the General Assembly when the question is one of standing under a specific statutory regime. *See* [*id.*] at 275."). Likewise, in the instant case, the Facilities lack standing under Section 103 of the Commonwealth Attorneys Act to assert any claim with respect to the contingent fee agreement between OAG and Cohen Milstein or the participation of Cohen Milstein in OAG's investigations or enforcement actions under the Administrative Code or the Consumer Protection Law. As a result, Count II, and the portions of Counts I and III relating to the contingent fee agreement with Cohen Milstein or its participation in the investigation and litigation, are dismissed.

Accordingly, the preliminary objections of the Attorney General and Cohen Milstein are sustained; their motion to dismiss is granted; and the Facilities' amended petition for review is dismissed.

_____
DAN PELLEGRINI, President Judge

Judge Cohn Jubelirer did not participate in the decision of this case.
Judge McCullough dissents.

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

GGNSC Clarion LP d/b/a "Golden : 
Living Center – Clarion", : 
GGNSC Warren Kinzua Valley LP : 
d/b/a "Golden Living Center – Kinzua", : 
GGNSC Wilkes-Barre II LP d/b/a : 
"Golden Living Center – Summit", : 
HarmarVillage Care Center LLC : 
d/b/a HarmarVillage Care Center, : 
Providence Care Center LLC d/b/a : 
Providence Care Center, Mulberry : 
Square Elder Care & Rehabilitation, : 
LLC, Guardian Elder Care at Carlisle, : 
LLC, Guardian Elder Care at Mountain : 
Top I, LLC & Rehabilitation Center, : 
Guardian Elder Care at Nanticoke LLC, : 
Jefferson Hills Manor LLC, : 
Brookline at Mifflintown, Inc., : 
Reliant Audubon Holdings LLC, : 
Reliant Evergreen Holdings LLC, : 
Reliant Palmyra Holdings LLC, : 
Reliant Silver Oaks Holdings LLC, : 
Reliant Kade Holdings LLC, Reliant : 
Coventry Holdings LLC, Reliant : 
Overlook Holdings LLC, Reliant : 
Briarcliff Holdings LLC, : 
Pennsylvania Health Care Association, : 
                   : 
         Petitioners : 
                   : 
         v. :    No. 165 M.D. 2015
                   : 
Kathleen G. Kane, in her Official : 
Capacity as Attorney General of the : 
Commonwealth of Pennsylvania, and : 
Cohen Milstein Sellers & Toll PLLC, : 
                   : 
         Respondents :

# **O R D E R**

AND NOW, this 11th day of January, 2016, the preliminary objections of Kathleen G. Kane, in her Official Capacity as Attorney General of the Commonwealth of Pennsylvania and Cohen Milstein Sellers & Toll PLLC, are sustained; their motion to dismiss is granted; and the petition for review seeking declaratory relief filed by GGNSC Clarion LP d/b/a "Golden Living Center – Clarion," *et al.* is dismissed.

_____
DAN PELLEGRINI, President Judge